1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| In re: | ) | Case No. 24-22206-B-11 |
| | ) | |
| VILLAGE OAKS SENIOR CARE, LLC, | ) | DC No. FWP-1 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| In re: | ) | Case No. 24-22208-B-11 |
| | ) | |
| EL DORADO SENIOR CARE, LLC, | ) | DC No. FWP-1 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| In re: | ) | Case No. 24-22236-B-11 |
| | ) | |
| BENJAMIN L. FOULK, | ) | DC No. FWP-1 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |

**MEMORANDUM DECISION SUSTAINING OBJECTIONS TO DEBTORS'
SUBCHAPTER V ELIGIBILITY**

**I.**

**Introduction**

Before the court are three objections filed by secured creditor Gina MacDonald ("Ms. MacDonald").[1]  The objections are filed in the three separate but related subchapter V chapter 11 cases of In re Village Oaks Senior Care, LLC, No. 24-22206 ("Village Oaks"), In re El Dorado Senior Care, LLC, No. 24-22208 ("El Dorado"), and In re Benjamin L. Foulk, No. 24-22236 ("Foulk").  Ms. MacDonald objects to the debtors' eligibility to be debtors under subchapter V.  The crux of Ms. MacDonald's

_____

[1]Ms. MacDonald is the ex-wife of Benjamin L. Foulk ("Dr. Foulk").  Alfiya Foulk is Mr. Foulk's current wife.

1   objections are that the debtors are affiliated debtors and their
2   aggregated noncontingent liquidated debts exceed the statutory
3   cap of $7,500,000.00 for subchapter V eligibility under the
4   version of 11 U.S.C. § 1182 in effect when the debtors filed
5   their chapter 11 petitions.[2]

6       Village Oaks, El Dorado, and Dr. Foulk filed responses to
7   Ms. MacDonald's objections.  The responses filed by Village Oaks
8   and El Dorado, both of whom are represented by the same attorney,
9   mirror each other.  The response filed by Dr. Foulk, who is
10  represented by another attorney, is somewhat different.
11  Generally, though, each response disputes the debtors' affiliate
12  status, asserts that aggregated debts fall below the
13  $7,500,000.00 subchapter V debt cap, and contends that Ms.
14  MacDonald waived any objection to the debtors' subchapter V
15  eligibility.

16      Ms. MacDonald filed replies to the debtors' responses.  The
17  replies filed in the Village Oaks and El Dorado cases mirror each
18  other.  The reply filed in the Foulk case is different.  The
19  replies address each of the arguments raised in the responses.

20      The court heard oral argument on the objections in all three
21  cases on October 1, 2024.  Appearances were noted on the record.
22  The court has also reviewed and considered the objections,
23  responses, replies, and all related declarations and exhibits.
24  The court takes judicial notice of the dockets in the Village
25  Oaks, El Dorado, and Foulk cases.  <u>See</u> Fed. R. Evid. 201(c)(1).

26  _____

27      [2]The debt limit to qualify under chapter 11, subchapter V,
    was $7,500,000.00 when the petitions were filed in May 2024.
28  That debt limit sunset on June 21, 2024.

1    For the reasons explained below, the court concludes as
2    follows: (i) Village Oaks, El Dorado, and Foulk are vertically-
3    affiliated debtors; (ii) Village Oaks and El Dorado are
4    horizontally-affiliated debtors; (iii) aggregated noncontingent
5    liquidated debts exceed the $7,500,000.00 subchapter V debt cap;
6    and (iv) Ms. MacDonald's eligibility objections are not waived.
7    Each of Ms. MacDonald's eligibility objections will therefore be
8    sustained, the three chapter 11 cases will be de-designated as
9    subchapter V cases, the three chapter 11 cases will no longer
10   proceed under subchapter V, and the subchapter V trustees will be
11   discharged.  The court also provides notice of its intent to
12   consider the appointment of a chapter 11 trustee in all three
13   bankruptcy cases for reasons explained below.

14

15                                **II.**

16                    **Statement of Relevant Facts**

17    Village Oaks and El Dorado are limited liability companies.
18   Dr. Foulk is the sole member-and he owns and controls 100%-of
19   Village Oaks and El Dorado.

20    The voluntary chapter 11 petition that commenced the Foulk
21   case was filed on May 22, 2024.  The voluntary chapter 11
22   petitions that commenced the Village Oaks and El Dorado cases
23   were filed the day before, on May 21, 2024.  All three debtors
24   elected to proceed under subchapter V in their petitions.

25    Dr. Foulk and Village Oaks are borrowers on a loan from
26   First-Citizens Bank & Trust Company ("First-Citizens") in the
27   original principal amount of $3,285,000.00.  El Dorado is a
28   guarantor of that loan.

Schedules in the Foulk case were filed with the petition on May 22, 2024. Schedule D lists a secured debt to First-Citizens in the amount of $3,250,000.00. A declaration that Dr. Foulk also filed in the Foulk case two days later, on May 24, 2024, states as follows:

> 6. On August 9, 2018, along with Village Oaks, and Alfiya Bogdanova Laub, Inc., a corporation owned by my spouse, I entered into a loan agreement with First-Citizens through a program established by the U.S. Small Business Association, and borrowed the sum of $3,285,000 (the "SBA Loan"). El Dorado and Alfiya Foulk, my spouse, guaranteed the loan.

Foulk, Case No. 24-22236, Docket 21.

Dr. Foulk signed the Village Oaks and El Dorado Schedules on behalf of the respective debtors under penalty of perjury. Schedules in the Village Oaks case were filed on June 4, 2024. Schedule D lists the amount of the First-Citizens loan as "unknown."[3] Schedules in the El Dorado case were also filed on June 4, 2024. These Schedules omit El Dorado's guarantor liability to First-Citizens on the loan to Dr. Foulk and Village Oaks.[4]

During oral argument, the attorney representing Village Oaks and El Dorado had no explanation why Village Oaks would schedule the amount of its obligation to First-Citizens as "unknown" when Dr. Foulk included the amount of that debt in Schedules and in a declaration filed two weeks earlier in his own chapter 11 case.

---

[3]Amended Schedule D filed on August 19, 2024, also lists Village Oaks' debt to First-Citizens as "unknown."

[4]Amended Schedules filed on August 19, 2024, also fail to list El Dorado's guarantor liability on the First-Citizens loan to Village Oaks and Dr. Foulk.

There also was no explanation why El Dorado would not schedule its guarantor liability on the First-Citizens loan when, again, Dr. Foulk identified El Dorado's guarantor liability in a declaration filed two weeks earlier in his own chapter 11 case. The same attorney also conceded that, if aggregated, the debts of the debtor entities exceed the $7,500,000.00 subchapter V debt cap. Dr. Foulk's attorney largely adopted these arguments and also provided no explanation or justification for scheduling the First-Citizens debt in the Village Oaks Schedules as "unknown" or for the omission of the First-Citizens guarantor debt from the El Dorado Schedules.

Ms. MacDonald made her initial appearance in the El Dorado and Foulk cases on June 6, 2024. She made her initial appearance in the Village Oaks case the following day, on June 7, 2024.

Following Ms. MacDonald's initial appearance in each of the three bankruptcy cases, on June 10, 2024, she opposed the debtors' then pending cash collateral and wage payment motions. She questioned the debtors' subchapter V eligibility in all three oppositions.

With regard to the cash collateral and wage payment motions, specific and common to each were assertions that estate funds consisting of cash collateral should not be used to pay the insider salaries of Dr. Foulk or the current Mrs. Foulk. Ms. MacDonald also urged the court to limit the duration for which the debtors could use cash collateral. And she argued for the imposition of strict accounting requirements consisting of weekly actual to budget reports. The court ultimately agreed with Ms. MacDonald on each of her points, ordering that: (i) estate funds

consisting of cash collateral could not be used to pay the
current Mrs. Foulk; (ii) cash collateral could be used for
limited payments to Dr. Foulk to allow for personal expenses;
(iii) approved use of cash collateral in all three chapter 11
cases would extend through November 2024; (iv) Village Oaks and
El Dorado must account for their use of cash collateral in weekly
actual to budget reports; and (v) Dr. Foulk must also file weekly
reports accounting for his use of cash collateral.

Meanwhile, based on prepetition conduct in and associated
with Ms. MacDonald's and Dr. Foulk's ongoing state court divorce
proceeding, Ms. MacDonald also urged the court to remove each
debtor from possession on the basis that all debtors lacked the
capacity to serve as estate fiduciaries.[5]  Ms. MacDonald's
assertions caused the court to issue a June 25, 2024, order in
the Village Oaks, El Dorado, and Foulk cases for the debtors to
show cause why they should not be removed from possession.

Accepting the court's invitation for parties in interest to
respond to the order to the show cause, Ms. MacDonald submitted a
response which invoked 11 U.S.C. § 1185 as a basis for removing
the debtors from possession.  The response included hundreds of
pages of points and authorities, argument, trial transcripts,

---

[5]The prepetition conduct included significant sanctions
against Dr. Foulk issued by the divorce court and affirmed by the
California Court of Appeal resulting from Dr. Foulk's scrupulous
litigation and discovery tactics.  It also included Dr. Foulk's
transfer of the debtor entities' properties, Dr. Foulk's transfer
of his interests in the debtor entities, and Dr. Foulk's transfer
of a personal investment account valued at over $300,000.00 all
in close proximity to a divorce court judgment in excess of
$2,000,000.00 entered for Ms. MacDonald and against Dr. Foulk,
Village Oaks, and El Dorado.

depositions, and § 341 testimony in support of removal.  Although
the court ultimately decided against removal, Ms. MacDonald's
response made it clear that oversight was necessary.  In that
regard, Ms. MacDonald's response was instrumental in the court's
decision to expand the powers of the subchapter V trustees
appointed in each of the three bankruptcy cases to the fullest
extent possible under 11 U.S.C. § 1183(b)(2).  The subchapter V
trustees were ordered to closely monitor the respective debtors
as debtors in possession and they were also specifically
instructed to report any breaches by any debtor in possession of
any fiduciary obligation(s).

Ms. MacDonald's involvement in the bankruptcy cases includes
participation in two additional matters limited to the Foulk
case.  First, she opposed Dr. Foulk's assumption of several
commercial leases.  Second, she successfully objected to Dr.
Foulk's claim of exemptions obtaining a statement of non-
opposition resulting in the claimed exemptions being disallowed.

### III.

### Analysis and Discussion

The concession made during oral argument that aggregated
debts exceed the $7,500,000.00 subchapter V debt cap leaves two
issues for consideration.  The first is whether Ms. MacDonald
waived her subchapter V eligibility objections.  The second is
whether Village Oaks and El Dorado are affiliated debtors.

Initially, the parties confuse "forfeiture" and "waiver."
Whereas "forfeiture" is the failure to timely assert a right,
"waiver" ordinarily means an intentional relinquishment or

- 7 -

1  abandonment of a known right or privilege.  <u>Resource Funding,</u>
2  <u>Inc. v. Pacific Continental Bank (In re Washington Coast I, LLC)</u>,
3  485 B.R. 393, 407 n.12 (9th Cir. BAP 2012).

4      Ms. MacDonald did not forfeit her right as a party in
5  interest to object to the debtors' subchapter V eligibility
6  because her objections were timely asserted.  Bankruptcy Rule
7  1020(a) states that "[i]n a voluntary chapter 11 case, the debtor
8  shall state in the petition whether the debtor is a small
9  business debtor and, if so, whether the debtor elects to have
10  subchapter V of chapter 11 apply."  Fed. R. Bankr. P. 1020(a).
11  Bankruptcy Rule 1020(b) further states that "a party in interest
12  may file an objection to the debtor's statement under subdivision
13  (a) no later than 30 days after the conclusion of the meeting of
14  creditors held under § 341(a) of the Code, or within 30 days
15  after the amendment to the statement, whichever is later."  Fed.
16  R. Bankr. P. 1020(b).

17      Ms. MacDonald filed her eligibility objections within the
18  time required by Fed. R. Bankr. P. 1020(b).  The § 341(a)
19  meetings in the Village Oaks and El Dorado cases concluded on
20  July 18, 2024.  The eligibility objection in the Village Oaks
21  case was filed on August 19, 2024, and, thus, was filed 32 days
22  after the § 341(a) meeting in that case concluded.[6]  The
23  eligibility objection in the El Dorado case was filed on August
24  16, 2024, and, thus, was filed 29 days after the § 341(a) meeting
25  in that case concluded.  The § 341(a) meeting in the Foulk case

27  [6]The 30th day was August 17, 2024, which was a Saturday
thereby effectively making the 30th day Monday, August 19, 2024.
28  <u>See</u> Fed. R. Bankr. P. 9006(a)(1)(C).

- 8 -

concluded on July 29, 2024. The eligibility objection in the Foulk case was filed on August 28, 2024, and, thus, was filed 30 days after the § 341(a) meeting in that case concluded.

Although not forfeited, the court could conclude that Ms. MacDonald waived her objection. An objection to a debtor's subchapter V designation-even when the debtor does not satisfy the eligibility requirements of 11 U.S.C. § 1182(1)(A)-is subject to waiver. In re 2022 East Anderson St., LLC, 2024 WL 1340655, at *5 (Bankr. C.D. Cal. March 28, 2024) ("This Court is vested with the authority to . . . deem objections to the subchapter V designation waived, and allow the case to continue to proceed under subchapter V — even when, as in the present case, Debtor does not satisfy the eligibility requirements specified in 11 U.S.C. 1182(1)(A)."). In that regard, waiver of subchapter V eligibility is not unlike waiver of chapter 13 eligibility under 11 U.S.C. § 109(e). See Mission Hen, LLC v. Lee (In re Lee), 655 B.R. 340, 352 n.7 (9th Cir BAP 2023) ("We also note that eligibility under § 109(e) is not jurisdictional and can be waived.") (citing FDIC v. Wenberg (In re Wenberg), 94 B.R. 631, 636 (9th Cir. BAP 1988), aff'd, 902 F.2d 768 (9th Cir. 1990)).

The question, then, is how is an objection to subchapter V eligibility waived? 2022 East Anderson provides one answer, i.e., by stipulation. In re 2022 East Anderson, 2022 WL 1340655 at *5. Mission Hen provides another answer, i.e., if an objection is not made "before the parties have expended much time, effort, or money on the case." Id. at 352. Indeed, in Mission Hen the bankruptcy appellate panel noted that the secured creditor did not raise a chapter 13 eligibility objection until

- 9 -

"long after" the bankruptcy court held an evidentiary hearing and well into the case. Id. at 352 n.7. Noting that an eligibility determination at that juncture "would force the bankruptcy court to evaluate eligibility while completely ignoring all of the work it and the parties had done to value [p]roperty," id. at 352, the bankruptcy appellate panel concluded that "[t]he bankruptcy court could have held that Mission Hen's inexplicable delay amounted to a waiver of its eligibility argument." Id. at 352 n.7.

The take-away from Mission Hen is that an eligibility objection waiver may arise from the objecting party's litigation conduct which, in turn, requires a factual examination of the extent to which an objecting party knew it could object, failed to assert its objection, proceeded in the case, and raised the objection only after participating substantially in the case. Indeed, the United State Supreme Court said as much in Wellness International Network, Ltd. v. Sharif, 575 U.S. 665 (2015), in which it held that a party may impliedly waive a constitutional objection to the bankruptcy court's authority to enter a final judgment by its conduct in the case. The "conduct" to which the Supreme Court referred is, of course, the objecting party's "litigation conduct." See e.g., GPX Capital, LLC v. Argonaut Manufacturing Services, Inc. (In re Bioserv Corporation), 2024 WL 4200575, at *1 (9th Cir. Sept. 16, 2024); accord Arenas v. Inslee (In re Arenas), 2023 WL 3451028, at *1 (9th Cir. May 15, 2023); Blixseth v. Glasser (In re Yellowstone Mountain Club, LLC), 656 Fed.Appx. 307, 309 (9th Cir. July 22, 2016).

Ms. MacDonald knew there were subchapter V eligibility issues when she made her initial appearance in each bankruptcy

case.  Indeed, she raised the eligibility issue in oppositions to the debtors' cash collateral motions filed within days of her initial appearance in each case.  Over the course of the next three months, Ms. MacDonald participated in the Village Oaks, El Dorado, and Foulk cases.  She appeared at every hearing.  She also objected or responded to nearly every motion, application, or request by the debtors.

Ms. MacDonald's participation resulted in countless hours of attorney preparation, travel, and appearance time, at great expense to all parties.  It has also resulted in a substantial investment by the court of its own judicial resources.

Through her participation, Ms. MacDonald invoked the Code and obtained relief favorable to her as a creditor- she acknowledged as much during oral argument.  For example, through her objections to the debtors' cash collateral and wage payment motions, Ms. MacDonald successfully obtained an order from this court that: (i) restricted each debtors' permissible use of cash collateral; (ii) prohibited (as to Mrs. Foulk) and limited (as to Dr. Foulk) the use of cash collateral to pay insider salaries; (iii) limited the period of time each debtor is authorized to use cash collateral; and (iv) imposed strict accounting requirements on the debtors' use of cash collateral.

Ms. MacDonald also responded to the court's order to show cause why the debtors should not be removed from possession, and in her response, she invoked 11 U.S.C. § 1185 as the basis for removing all debtors from possession.  The concerns that Ms. MacDonald raised in her response-and the depth of the response itself-resulted in an order in which the court expanded the

subchapter V trustees' powers to include oversight of each debtor
in possession with a specific direction for the subchapter V
trustees to report any misconduct or breach of fiduciary duties.

The salient point here is that from her initial appearance
through the date of this memorandum decision Ms. MacDonald's
participation in the Village Oaks, El Dorado, and Foulk cases, as
subchapter V cases, has been extensive, substantive, and it has
altered the trajectory of the bankruptcy cases.  Ms. MacDonald
admittedly knew upon her appearance in each of the cases there
were subchapter V eligibility issues and, yet, over a period of
several months she engaged the debtors, invoked the Code, and
prevailed on a number of issues in the cases as subchapter V
cases.  Viewed in this context, the court could take its cue from
Mission Hen and Wellness and hold that Ms. MacDonald's objections
to the debtors' subchapter V eligibility have been waived.

But waiver is an equitable doctrine.  Arellano v. McDonough,
143 S.Ct. 543, 552 n.3 (2023); J&M Food Services v. Camel
Investment, LLC (In re J&M Food Services, Inc.), 770 Fed.Appx.
865, 866 (9th Cir. May 24, 2019).  It is, of course, "incongruous
to invoke equity when it would achieve an inequitable result[.]"
Hayes v. Silver Queen Project, Inc., 922 F.2d 844, 1991 WL 1669,
at *3 (9th Cir. Jan. 10, 1991); see also Lott v. Louisville Metro
Government, 2021 WL 1031008, at *7 (W.D. Ky. March 17, 2021)
("[A] rule of equity . . . should not be applied if to do so
reaches an inequitable result.").  And therein lies the problem
for the debtors.

Aggregated debts for purposes of the $7,500,000.00
subchapter V debt cap include those of the debtor and any

- 12 -

affiliates.  See 11 U.S.C. § 1182(1)(A).  Based on Dr. Foulk's
100% ownership and control of Village Oaks and El Dorado, the
parties do not dispute that Dr. Foulk and the debtor entities are
affiliated debtors.  See 11 U.S.C. § 101(2).  The real question
is whether the debtor entities are affiliates of each other.  Ms.
MacDonald asserts they are.  The debtors assert they are not.
The answer matters because of the oral argument concession that
aggregated debts of the debtor entities exceed $7,500,000.00
subchapter V debt cap.

On the issue of the horizontal affiliate status of Village
Oaks and El Dorado, the court agrees with Ms. MacDonald.  In In
re Opus East, LLC, 528 B.R. 30, 92 (Bankr. D. Del. 2015), aff'd,
Burtch v. Opus, LLC (In re Opus East, LLC), 2016 WL 1298965 (D.
Del. Mar. 31, 2016), aff'd, 698 Fed.Appx. 711 (3d Cir. Sept. 28,
2017), the Delaware bankruptcy court cited In re Reichmann
Petroleum Corp., 364 B.R. 916, 921 (Bankr. E.D. Tex. 2007), to
illustrate the horizontal affiliate relationship as follows:

> i.   Striker owns at least 20% of the voting shares of
>      Reichmann;
>
> ii.  Striker owns 70% of Emergent, which in turn owns
>      100% of Freedom; therefore, Striker indirectly
>      controls at least 20% of the outstanding voting
>      shares of Freedom; and
>
> iii. because Striker directly or indirectly owns or
>      controls at least 20% of the outstanding voting
>      shares of both Reichmann and Freedom, Freedom and
>      Reichmann are, in fact, affiliates based upon the
>      existence of the requisite horizontal relationship
>      upon which affiliate status is conferred by the
>      second prong of § 101(2)(B) of the Bankruptcy
>      Code.

Opus East, 528 B.R. at 92; see also Winn-Dixie Stores, Inc. v.
Eastern Mushroom Marketing Cooperative, 2021 WL 1907501, at *2 &

- 13 -

\*12 (E.D. Pa. May 12, 2021) (noting that two corporations with same sole shareholder and president were affiliates of each other under 11 U.S.C. § 101(2)(B)).  The same reasoning applies here.

Just as Striker's ownership of Reichman and Freedom made Freedom and Reichman horizontal affiliates in the example above, Dr. Foulk's 100% ownership and control of Village Oaks and his 100% ownership and control of El Dorado makes Village Oaks and El Dorado horizontally-affiliated debtors here.  The debtors' assertion that Village Oaks and El Dorado are not affiliated debtors is also belied by the record.  Indeed, as Dr. Foulk successfully argued in reply to Ms. MacDonald's lease assumption opposition:  "Ms. MacDonald does not appear to understand—or she chooses to ignore—that the three estates are inextricably linked.  If you deprive one of cash . . . you may benefit the other two but, at the end of the day, it will be the same pot of cash that is available to pay creditors."  Docket 176 at 2:28-3:3.

The concession that the aggregated debts of Village Oaks and El Dorado exceed $7,500,000.00 subchapter V debt cap goes a long way to explain why Village Oaks would schedule the amount of its debt to First-Citizens as "unknown" and why El Dorado would omit its guarantor liability on that debt from its Schedules.  Dr. Foulk knew the amount of the Village Oaks debt to First-Citizens Bank and he knew El Dorado's guarantor status on that debt when the Village Oaks and El Dorado Schedules were filed.  Indeed, he disclosed both in the Schedules and in a declaration he filed in his own chapter 11 case two weeks earlier.  Viewed in this context, and with the debtors unable to explain why known debt was not accurately and truthfully scheduled, it is apparent that

the debtors knew the aggregated debts of the debtor entities exceeded the $7,500,000.00 subchapter V debt cap and they knew or anticipated that the debtor entities may be ineligible to be subchapter V debtors. So in an effort to manufacture subchapter V eligibility, or to at least make it more likely, the debtors manipulated debt in the Village Oaks and El Dorado Schedules to bring aggregated debts below $7,500,000.00.

Applying the waiver doctrine under these circumstances would encourage-if not reward-the knowing and intentional use of false Schedules in which debt is manipulated to achieve subchapter V eligibility or at least make it more likely. It would also allow the debtor entities here to proceed under subchapter V when the debtors knew-or at least anticipated-that they were not-or that they may not be-eligible subchapter V debtors in the first instance. The court declines to apply the waiver doctrine to bring about these inequitable results. See In re Heart Heating and Cooling, LLC, 2024 WL 122837, at *12 (Bankr. D. Colo. March 21, 2024) (admonishing debtors for manipulating schedules by reducing debt and make subchapter V eligibility more likely); see also Tico Construction Company, Inc. v. Powell (In re Powell), --- F.4th ---, 2024 WL 4352615 at *7 n.11 (9th Cir. Oct. 1, 2024) (stating that the bankruptcy court is not required to ignore falsity and bad faith of schedules in the eligibility context). The court will therefore sustain Ms. MacDonald's objections and the Village Oaks, El Dorado, and Foulk cases will be de-designated as subchapter V chapter 11 cases.

The debtors' intentional use of knowingly false Schedules in an effort to manufacture subchapter V eligibility-or make

subchapter V eligibility more likely-by manipulating debt also brings to the forefront another issue not discussed during oral argument but which the court may raise sua sponte and which is now relevant in light of this memorandum decision. And that is the appointment of a chapter 11 trustee in each of the three bankruptcy cases. <u>Fukutomi v. United States Trustee (In re Bibo, Inc.)</u>, 76 F.3d 256, 258 (9th Cir. 1996) (court may raise appointment of a trustee sua sponte even if considered for the first time during a hearing unrelated to and not scheduled for the purposes of appointing a trustee).

The court considers the debtors' knowing and intentional use of false Schedules in which debts are manipulated to manufacture subchapter V eligibility to be the tipping point following its July 15, 2024, order and the prepetition misconduct cited in the order to show cause of June 25, 2024. At a minimum, because Schedules are filed under penalty of perjury, the use of false Schedules to manufacture subchapter V eligibility is dishonesty under 11 U.S.C. § 1104(a)(1). Considering the prepetition conduct that resulted in an expansion of the subchapter V trustees' powers, the appointment of a chapter 11 trustee is also now necessary to facilitate confidence in and trustworthiness of the debtors and management of the debtor entities making the appointment of a chapter 11 trustee in the interest of creditors under 11 U.S.C. § 1104(a)(2). <u>See</u> <u>In re Euro-American Lodging Corp.</u>, 365 B.R. 421, 427 (Bankr. S.D.N.Y. 2007); <u>In re Nat'l Farm Fin. Corp.</u>, 2008 WL 410236, at *2 (Bankr. N.D. Cal. Feb. 12, 2008).

At the end of the day, it is the debtors who bear the burden

- 16 -

1  of proving their purported subchapter V eligibility.  <u>NetJets</u>
2  <u>Aviation, Inc. v. RS Air, LLC (In re RS Air, LLC)</u>, 638 B.R. 403,
3  413 (9th Cir. BAP 2022).  "The burden of proof equates with the
4  burden of persuasion and is accompanied by the correlative risk
5  of non-persuasion."  <u>In re Tallerico</u>, 532 B.R. 774, 790 (Bankr.
6  E.D. Cal. 2015).  The debtors have failed to meet that burden.
7  Aggregated noncontingent liquidated debts of all debtors exceed
8  the statutory cap for subchapter V eligibility in effect on the
9  petition dates and, for the reasons explained above, the debtors
10 have not persuaded the court it should apply the waiver doctrine
11 to permit them to remain under subchapter V with debts admittedly
12 in excess of $7,500,000.00- vertically and horizontally.

13

14                              **IV.**

15                          **Conclusion**

16       For the foregoing reasons, Ms. MacDonald's objections to the
17 debtors' subchapter V eligibility at (i) Docket 185 in the
18 Village Oaks case, (ii) Docket 215 in the El Dorado case, and
19 (iii) Docket 186 in the Foulk case are **SUSTAINED.**  The Village
20 Oaks, El Dorado, and Foulk chapter 11 cases will be de-designated
21 as subchapter V cases and will not proceed under subchapter V
22 from and after the date of the order entered on this memorandum
23 decision.  The subchapter V trustees are discharged.  The court
24 will address the appointment of a chapter 11 trustee in the
25 Village Oaks, El Dorado, and Foulk cases on **November 5, 2024, at**
26 **11:00 a.m.**

27       A separate order will issue.

                              **Dated:** October 11, 2024

28
                              Christopher D. Jaime, Judge
                              United States Bankruptcy Court

                              - 17 -

**INSTRUCTIONS TO CLERK OF COURT**
**SERVICE LIST**

The Clerk of Court is instructed to send the attached document, via the BNC, to the following parties:

Ed Hays
Marshack Hays Wood LLP
870 Roosevelt
Irvine CA 92620

Lisa A. Holder
2601 Kilcarey Court
Bakersfield CA 93306

Jason E. Rios
500 Capitol Mall, Suite 2250
Sacramento CA 95814

Michael J. Harrington
Law Offices of Michael J. Harrington
1520 East Covell Blvd.
Suite B5-346
Davis CA 95616

Walter R. Dahl
8757 Auburn Folsom Rd #2820
Granite Bay CA 95746-2820

Jorge A. Gaitan
501 I St #7-500
Sacramento CA 95814

Martha A. Warriner
DiMarco Warshaw, APLC
P.O. Box 704
San Clemente CA 92674